*382
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Once again we address the applicability of a pollution exclusion endorsement in an insurance policy
 
 (see e.g. Westview Assoc. v Guaranty Natl. Ins. Co.,
 
 95 NY2d 334 [2000];
 
 Northville Indus. Corp. v National Union Fire Ins. Co.,
 
 89 NY2d 621 [1997]). Because the exclusion at issue is ambiguous when applied to the personal injury claim underlying this case, we affirm the Appellate Division’s grant of summary judgment to plaintiff insured.
 

 I.
 

 Plaintiff, a painting subcontractor, purchased a commercial general liability (CGL) policy from defendant TIG Insurance Company. The policy provides that TIG would defend and indemnify plaintiff for claims of bodily injury and property damage up to one million dollars. The policy contains a standard form “Total Pollution Exclusion Endorsement,” which excludes coverage for “ ‘Bodily injury’ or ‘property damage’ which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.” “Pollutants” are defined as “any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.”
 

 In 1997, Joseph Cinquemani commenced an action against plaintiff and several others, alleging that he was injured as a result of inhaling paint or solvent fumes in an office building where plaintiff insured was performing stripping and painting work. Plaintiff submitted the lawsuit to its insurer, seeking defense and indemnification. TIG responded that it would not cover Cinquemani’s claim, relying on the policy’s pollution exclusion.
 

 Plaintiff then commenced the present action seeking a declaratory judgment that its insurer is obligated to defend
 
 *383
 
 and indemnify it in the underlying personal injury action. Supreme Court granted TIG’s motion for summary judgment and denied plaintiffs cross motion, concluding that the underlying claim falls within the unambiguous language of the pollution exclusion. The court rejected plaintiffs contention that the exclusion is inapplicable because the underlying injury was not caused by environmental or industrial pollution, stating “it has been held that indoor air contamination * * * can constitute environmental pollution.”
 

 The Appellate Division reversed and granted summary judgment to plaintiff. Relying on
 
 Westview Assoc. v Guaranty Natl. Ins. Co.
 
 (95 NY2d 334 [2000]), the Court rejected the insurer’s literal reading of the pollution exclusion in favor of a common sense construction that the clause applies only where the damages alleged “are truly environmental in nature” or result from “pollution of the environment” (293 AD2d 206, 210-211 [2002]). We agree that the exclusion does not apply to the underlying personal injury action and therefore affirm.
 

 II.
 

 We begin with fundamentals. We read an insurance policy in light of “common speech” and the reasonable expectations of a businessperson (Ace
 
 Wire & Cable Co. v Aetna Cas. & Sur. Co.,
 
 60 NY2d 390, 398 [1983];
 
 Northville Indus. Corp.,
 
 89 NY2d at 633). As we have repeatedly held, an insurer has a duty to defend if the allegations state a cause of action that gives rise to the reasonable possibility of recovery under the policy
 
 (Fitzpatrick v American Honda Motor Co.,
 
 78 NY2d 61, 65 [1991]). Moreover, to “negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case”
 
 (Continental Cas. Co. v Rapid-American Corp.,
 
 80 NY2d 640, 652 [1993]). It follows that policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer
 
 (Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,
 
 34 NY2d 356, 361 [1974]).
 

 This is not the first time this Court has construed a pollution exclusion in the context of a personal injury claim. Indeed, two of our decisions have particular relevance to the issue now before us.
 

 In
 
 Continental Casualty,
 
 the Court held that the pollution exclusion at issue was ambiguous as applied to the underlying asbestos exposure injuries and therefore found in favor of the
 
 *384
 
 insured.
 
 [1]
 
 We reasoned that, although asbestos may be an irritant, contaminant or pollutant under the exclusion, the clause was ambiguous with regard to whether the asbestos fibers that caused the injuries were discharged into the atmosphere as contemplated by the exclusion (80 NY2d at 653). This conclusion was based on both an ambiguity in the term “atmosphere,” and our recognition that the purpose of the exclusion was to deal with broadly dispersed environmental pollution.
 

 Similarly, in
 
 Westview
 
 we rejected the insurer’s argument that a pollution exclusion negated coverage for claims based on lead paint poisoning, concluding that, among other things, the insurer failed to meet its heavy burden of showing that lead paint is unambiguously included within the exclusion’s definition of “pollutant” (95 NY2d at 340).
 
 [2]
 

 In the present matter, TIG contends that the endorsement at issue clearly and unambiguously applies to exclude coverage. The insurer argues that, unlike
 
 Westview,
 
 the injury-causing element here — paint or solvent fumes — is well within the defined pollutants, which specifically include “fumes.” Further, TIG argues that, unlike
 
 Continental Casualty,
 
 the clause at issue in this case does not include the language “into or upon land, the atmosphere or any water course or body of water.” That omission, the insurer contends, unambiguously renders the exclusion applicable. We disagree.
 

 III.
 

 Since their genesis approximately 30 years ago, pollution exclusion clauses in their various incarnations have engendered litigation, and divergent results.
 

 Pollution exclusions actually originated in insurers’ efforts to avoid potentially open-ended liability for the type of long-term, gradual discharge of hazardous waste and byproducts exemplified by the Times Beach and Love Canal disasters
 
 (see American States Ins. Co. v Koloms,
 
 177 111 2d 473, 490, 687 NE2d 72,
 
 *385
 
 80 [1997]). The insurance industry explicitly began excluding pollution damage in the early 1970s as a consequence of then-new state and federal legislation mandating that polluters stand responsible for cleanup costs (see 9 Couch on Insurance 3d § 127:3).
 

 In New York, the pollution exclusion was required in all commercial and industrial liability policies from 1971 to 1982 to “assure that corporate polluters bear the full burden of their own actions spoiling the environment” (Governor’s Mem approving L 1971, ch 765-766, 1971 McKinney’s Session Laws of NY, at 2633). When the law was amended to allow insurers to provide coverage for pollution, it was part of a “comprehensive effort to encourage industry responsibly to handle its hazardous wastes” and “safeguard the public from the adverse consequences of hazardous waste handlers which become financially disabled” (Governor’s Mem approving L 1982, ch 855-856, 1982 McKinney’s Session Laws of NY, at 2629).
 

 The first pollution exclusion clause — the “qualified pollution exclusion” — appeared in most CGL policies issued between the early 1970s and 1985. It broadly excluded coverage for damages “arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.” The exclusion typically provided that it would
 
 not
 
 apply where the polluting discharge or release is “sudden and accidental.” Courts nationwide split on the interpretation of that clause, most pointedly diverging on the application of the terms “sudden and accidental” to instances of gradual pollution
 
 (compare e.g. Northville Indus. Corp.,
 
 89 NY2d 621 [1997] [“sudden” connotes abrupt]
 
 with Blackhawk-Central City Sanitation Dist. v American Guar. & Liab. Ins. Co.,
 
 214 F3d 1183 [10th Cir 2000] [“sudden” means unexpected or abrupt]).
 

 The next generation of pollution exclusions began about 1985, when insurers replaced the qualified pollution exclusion with the “absolute” or “total” pollution exclusion, which contains no exception for sudden and accidental incidents
 
 (see
 
 9 Couch on Insurance 3d § 127:14; 2 Stempel, Insurance Contract Disputes § 14.11 [a] [2d ed]). While ending the debate surrounding “sudden and accidental,” the absolute or total pol
 
 *386
 
 lution exclusion sparked new controversy.
 
 [3]
 
 Many courts have pronounced the exclusion unambiguous and applied it broadly, even to incidents that are not classic environmental pollution
 
 (see e.g. Deni Assoc. of Fla., Inc. v State Farm Fire & Cas. Ins. Co., 711
 
 So 2d 1135 [Fla 1998] [ammonia spill in insured’s office building];
 
 Assicurazioni Generali, S.p.A. v Neil,
 
 160 F3d 997 [4th Cir 1998] [carbon monoxide leak in insured’s hotel]). Other courts have found the clause to be ambiguous as applied to personal injury claims arising out of a more direct contact with a substance that may fall into the exclusion’s broad definition of “pollutant”
 
 (see e.g. Nautilus Ins. Co. v Jabar,
 
 188 F3d 27 [1st Cir 1999] [hazardous fumes from roofing chemical];
 
 American States Ins. Co. v Koloms, 177
 
 111 2d 473, 687 NE2d 72 [1997] [carbon monoxide leak due to broken furnace]).
 

 Courts following the latter approach have done so for a variety of reasons: because terms such as “dispersal,” “discharge,” “irritant” or “contaminant” are terms of art in environmental law
 
 (see Nautilus Ins. Co.,
 
 188 F3d at 30;
 
 see also Continental Cas.,
 
 80 NY2d at 653-654); because the general purpose of the clause is to shield insurers from the costs of environmental cleanups
 
 (see West Am. Ins. Co. v Tufco Flooring E., Inc.,
 
 104 NC App 312, 323, 409 SE2d 692, 699 [1991],
 
 overruled on other grounds by Gaston County Dyeing Mach. Co. v Northfield Ins. Co.,
 
 351 NC 293, 524 SE2d 558 [2000];
 
 see also Continental Cas.,
 
 80 NY2d at 654); or because a literal reading of the provision could yield absurd results, thus requiring the application of a limiting principle
 
 (see Pipefitters Welfare Educ. Fund v Westchester Fire Ins. Co.,
 
 976 F2d 1037, 1043 [7th Cir 1992]).
 

 The absolute or total pollution exclusions also typically dropped the language “into or upon land, the atmosphere or any water course or body of water.” This has generated yet another controversy: does the deletion of the “land,” “atmosphere” and “water” language make a difference? Some courts have held that the omission expands the scope of the exclusion beyond classic environmental pollution
 
 (see Oates v State of New York,
 
 157 Misc 2d 618 [Ct Cl 1993];
 
 Reliance Ins. Co. v Moessner,
 
 121 F3d 895 [3d Cir 1997]). Others have rejected the distinction, concluding it does not alter the scope of the clause
 
 (Meridian Mut. Ins. Co. v Kellman,
 
 197 F3d 1178 [6th Cir
 
 *387
 
 1999];
 
 Center for Creative Studies v Aetna Life & Cas. Co.,
 
 871 F Supp 941 [ED Mich 1994]).
 

 With this background in mind, we turn to the question whether the clause now before us unambiguously excludes coverage for injuries caused by inhalation of paint or solvent fumes in an office the insured was painting. We conclude that it does not.
 

 IV.
 

 Neither the inclusion of “fumes” in the definition of “pollutant,” nor the absence of the “land,” “atmosphere” or “water” language, persuades us that the exclusion is unambiguous as applied in this case. Reasonable minds can disagree as to whether the exclusion applies here.
 

 Although the ambiguity in
 
 Continental Casualty
 
 began with a focus on the term “atmosphere,” we rested our holding additionally on the fact that the terms used in the exclusion to describe the method of pollution — such as “discharge” and “dispersal” — are “terms of art in environmental law used with reference to damage or injury caused by disposal or containment of hazardous waste”
 
 (Continental Cas.,
 
 80 NY2d at 654). Those terms also appear in the pollution exclusion before us, which supports our conclusion that it does not clearly and unequivocally exclude a personal injury claim arising from indoor exposure to plaintiff insured’s tools of its trade (see
 
 Western Alliance Ins. Co. v Gill,
 
 426 Mass 115, 118, 686 NE2d 997, 999 [1997] [carbon monoxide leak in insured’s restaurant]).
 

 TIG understandably relies on the policy definition of “pollutants” as “any solid, liquid, gaseous or thermal irritant or contaminant including * * *
 
 fumes.”
 
 (Emphasis added.) This argument, however, proves too much. Were we to adopt TIG’s interpretation, under the language of this exclusion any “chemical,” or indeed, any “material to be recycled,” that could “irritate” person or property would be a “pollutant.” We are reluctant to adopt an interpretation that would infinitely enlarge the scope of the term “pollutants,” and seemingly contradict both a “common speech” understanding of the relevant terms and the reasonable expectations of a businessperson.
 

 Nor can the word “fumes” be isolated from its context in the endorsement. Even if the paint or solvent fumes are within the definition of “pollutant,” the exclusion applies only if the underlying injury is caused by “discharge, dispersal, seepage, migration, release or escape” of the fumes. It cannot be said
 
 *388
 
 that this language unambiguously applies to ordinary paint or solvent fumes that drifted a short distance from the area of the insured’s intended use and allegedly caused inhalation injuries to a bystander
 
 (see Roofers’ Joint Training, Apprentice & Educ. Comm. v General Acc. Ins. Co., 275
 
 AD2d 90 [4th Dept 2000]). As one court noted in a similar factual setting, “it strains the plain meaning, and obvious intent, of the language to suggest that these fumes, as they went from the container to [the injured party’s] lungs, had somehow been ‘discharged, dispersed, released or escaped’ ”
 
 (Meridian Mut. Ins. Co.,
 
 197 F3d at 1184,
 
 quoting Lumbermens Mut. Cas. Co. v S-W Indus., Inc.,
 
 23 F3d 970, 982 [6th Cir 1994]).
 

 Finally, we reject TIG’s contention that the absence of the language “into or upon land, the atmosphere or any water course or body of water” is a material difference that indicates an intent to extend the exclusion to indoor, as well as outdoor, pollution. Because any pollution will necessarily involve discharge or release into land, atmosphere or water, the omission of such language in the present policy simply removes a redundancy in the exclusion. It does not eliminate or overcome the environmental implications of the terms “discharge, dispersal, seepage, migration, release or escape”
 
 (see Tufco,
 
 104 NC App at 324-325, 409 SE2d at 699-700;
 
 American States Ins. Co.,
 
 177 Ill 2d at 493-494, 687 NE2d at 81-82;
 
 Stoney Run Co. v Prudential-LMI Commercial Ins. Co.,
 
 47 F3d 34 [2d Cir 1995];
 
 Center for Creative Studies,
 
 871 F Supp at 944-945).
 

 Having concluded that the endorsement is ambiguous as applied here, we agree with the Appellate Division that summary judgment should be awarded to plaintiff insured.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Smith, Ciparick, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . The pollution exclusion at issue in
 
 Continental Casualty
 
 excluded “personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden or accidental.” (80 NY2d at 646-647.)
 

 [2]
 

 . The pollution exclusion in
 
 Westview
 
 defined “pollutant” as “smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal ‘Pollutants,’ and all other irritants and ‘Contaminants.’ ”
 
 (Id.)
 

 [3]
 

 .
 
 See
 
 Stempel,
 
 Reason and Pollution: Correctly Construing the “Absolute” Exclusion in Context and in Accord with its Purpose and Party Expectations,
 
 34 Tort & Ins LJ 1 (1998); William P. Shelley and Richard C. Mason,
 
 Application of the Absolute Pollution Exclusion to Toxic Tort Claims: Will Courts Choose Policy Construction or Deconstruction?,
 
 33 Tort & Ins LJ 749 (1998).