PEPSICO, INC., et al., Respondents-Appellants, v WINTER-THUR INTERNATIONAL AMERICA INSURANCE COMPANY, Appellant-Respondent, et al., Defendant. [788 NYS2d 142]—

In an action, inter alia, to recover damages for breach of contract, the defendant Winterthur International America Insurance Company appeals from so much of an order of the Supreme Court, Westchester County (Rudolph, J.), entered October 29, 2003, as denied its motion for summary judgment dismissing the first cause of action, and the plaintiffs cross-appeal from so much of the same order as denied their cross motion for summary judgment dismissing the third and sixth affirmative defenses of the defendant Winterthur International America Insurance Company.

Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the cross motion which was for summary judgment dismissing the third affirmative defense and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with one bill of costs to the plaintiffs payable by the defendant Winterthur International America Insurance Company.

The plaintiffs Pepsico, Inc., Pepsi Bottling Group, Inc., and Frito Lay, Inc. (hereinafter collectively Pepsico), purchased an all-risk first-party property insurance policy from the defendant Winterthur International America Insurance Company (hereinafter Winterthur). During the policy period, Pepsico experienced a series of losses in connection with two of its soft drink products, Mountain Dew and Diet Pepsi, when Pepsico used faulty raw ingredients supplied by third-party suppliers. In each instance, the faulty ingredients resulted in the finished product having an off-taste. While not harmful to customers, the off-taste rendered the products unmerchantable and necessitated their destruction, resulting in alleged catastrophic losses to Pepsico. Winterthur disclaimed coverage, inter alia, on the basis of the "seepage and/or pollution and/or contamination" exclusion contained in the policy, claiming that this provision applied to product contamination based on the plain meaning of the word "contaminate," which is to make inferior or impure by mixture.

An insurance policy should be read "in light of 'common speech' and the reasonable expectations of a businessperson" (*Belt Painting Corp. v TIG Ins. Co.*, 100 NY2d 377, 383 [2003]; *see MDW Enters. v CNA Ins. Co.*, 4 AD3d 338 [2004]). Moreover, to " 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case' " (*Belt Painting Corp. v TIG Ins. Co., supra* at 383, quoting *Continental Cas. Co. v Rapid-Am. Corp.*, 80 NY2d 640, 652 [1993]; *see MDW Enters. v CNA Ins. Co., supra; Village Mall at Hillcrest Condominium v Merrimack Mut. Fire Ins. Co.*, 309 AD2d 857 [2003]). The burden, a heavy one, is on the insurer (*see Continental Cas. Co. v Rapid-Am. Corp., supra* at 654), and "[i]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer" (*Westview Assoc. v Guaranty Natl. Ins. Co.*, 95 NY2d 334, 340 [2000]; *see Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984]; *Village Mall at Hillcrest Condominium v Merrimack Mut. Fire Ins. Co., supra*).

We agree with the Supreme Court that the "Seepage and/or Pollution and/or Contamination Exclusion" in this policy, which provides that "[e]xcept as provided for in Section VII, clauses 7. and 8., this policy does not insure against loss, damage, costs or expenses in connection with any kind or description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever," does not apply to exclude the alleged losses claimed by Pepsico, which are non-environmental in nature (*see Belt Painting Corp. v TIG Ins. Co., supra; Westview Assoc. v Guaranty Natl. Ins. Co., supra; Continental Cas. Co. v Rapid-Am. Corp., supra; Roofers' Joint Training, Apprentice & Educ. Comm. of W. N.Y. v General Acc. Ins. Co. of Am.*, 275 AD2d 90 [2000]; *Cepeda v Varveris*, 234 AD2d 497 [1996]; *GA Ins. Co. of N.Y. v Naimberg Realty Assoc.*, 233 AD2d 363 [1996]; *see also Enron Oil Trading & Transp. Co. v Walbrook Ins. Co., Ltd.*, 132 F3d 526 [1997]; *Stoney Run Co. v Prudential-LMI Commercial Ins. Co.*, 47 F3d 34 [1995]). To accept Winterthur's interpretation would require that the term "contamination" be read literally, whereas New York courts, in construing terms in pollution exclusions, favor a commonsense approach over a literal approach (*see Westview Assoc. v Guaranty Natl. Ins. Co., supra; Belt Painting Corp. v TIG Ins. Co.*, 293 AD2d 206, 209 [2002], *affd* 100 NY2d 377 [2003]). Winterthur's reading also ignores the general purpose of pollution exclusions, which is to exclude coverage for environmental pollution (*see Belt Painting Corp. v TIG Ins. Co., supra* at 384; *Roofers' Joint*

*Training, Apprentice & Educ. Comm. of W. N.Y., supra* at 92; *Stoney Run Co. v Prudential-LMI Commercial Ins. Co., supra* at 37).

Furthermore, provisions in the policy speak of decontamination and debris removal in the context of removing pollutants from the land and water. Such language, and the references to governmental fines, unmistakably is directed to environmental pollution, and not product contamination. At best, there being more than one reasonable interpretation to the meaning of the term "contamination," the exclusion is ambiguous. Since it is ambiguous, the exclusion must be construed in favor of the insured (*see Westview Assoc. v Guaranty Natl. Ins. Co., supra; Continental Cas. Co. v Rapid-Am. Corp., supra* at 654; *Seaboard Sur. Co. v Gillette Co., supra; Village Mall at Hillcrest Condominium v Merrimack Mut. Fire Ins. Co., supra; Roofers' Joint Training, Apprentice & Educ. Comm. of W. N.Y., supra*). To accept Winterthur's reading would also contradict the "common speech" and "reasonable expectations of a businessperson" who has come to understand standard pollution exclusions as exclusions addressing environmental-type harms (*see Belt Painting Corp. v TIG Ins. Co., supra*).

Accordingly, the Supreme Court properly denied Winterthur's motion for summary judgment. The Supreme Court should, however, have granted that branch of Pepsico's cross motion which sought the dismissal of the sixth affirmative defense which pleaded the "seepage and/or pollution and/or contamination" exclusion.

The parties' remaining contentions are without merit. Santucci, J.P., H. Miller, Spolzino and Skelos, JJ., concur.