■ VIGILANT INSURANCE COMPANY et al., Plaintiffs and Counterclaim Defendants-Respondents-Appellants, v THE BEAR STEARNS COMPANIES, INC., Defendant and Counterclaim Plaintiff-Appellant-Respondent. [824 NYS2d 91]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered January 13, 2006, which granted in part and denied in part plaintiffs' summary judgment motion, unanimously modified, on the law, summary judgment granted to defendant on the investment banking exclusion and the independent research/investor education issue, and denied to plaintiffs regarding disgorgement, and otherwise affirmed, without costs.

The motion court properly found triable issues of fact as to whether defendant breached the insurance policies' provision which prohibited defendant from settling any claims or assuming any contractual obligations without plaintiffs' consent. The December 2002 settlement-in-principle was subject to the approval of the SEC and state regulatory authorities and required finalization of terms and documentation, so a trier of fact could find it was not a binding contract (*see e.g. Silverman v Member Brokerage Servs.*, 298 AD2d 381 [2002]; *Winston v Mediafare Entertainment Corp.*, 777 F2d 78 [2d Cir 1985]). The April 2003 settlement with the SEC was subject to court approval, and defendant submitted an affidavit from a member of its negotiating team, stating defendant could not be compelled to proceed with the settlement in the absence of court approval. Viewing the evidence in the light most favorable to defendant (the nonmovant), an issue of fact exists as to whether the April 2003 settlement was binding (*compare Valentino v State of New York*, 48 AD2d 15, 17 [1975], *with TLC Beatrice Intl. Holdings, Inc. v CIGNA Ins. Co.*, 2000 WL 282967, *7, 2000 US Dist LEXIS 2917, *20-21 [SD NY 2000]).

Defendant is not estopped from denying that the settlement was binding in April 2003 (*see e.g. Van Kipnis v Van Kipnis*, 8 AD3d 94 [2004]). In the prior lawsuit, defendant prevailed on the ground that "the Attorney General of West Virginia does

not have the authority pursuant to . . . the Consumer Credit and Protection Act to bring an action based upon conduct that is ancillary to the general business of buying and selling securities" (*State ex rel. McGraw v Bear, Stearns & Co., Inc.*, 217 W Va 573, 579, 618 SE2d 582, 588 [2005]), not because of the settlement.

The insurance policies exclude claims that are "based upon, arising from or in consequence of any underwriting, syndicating, or investment banking work, or associated counseling or investment activities, including, but not limited to, any aspect of any actual, attempted or threatened mergers, acquisitions, divestitures, tender offers, proxy contests, leveraged buy-outs, going private transactions, reorganizations, capital restructurings, recapitalizations, spinoffs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or a private placement), other efforts to raise or furnish capital or financing for any enterprise or entity or any disclosure requirements in connection with any of the foregoing."

"[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer" (*Belt Painting Corp. v TIG Ins. Co.*, 100 NY2d 377, 383 [2003]). To prevail, an insurer must show that its interpretation is the only reasonable one (*see e.g. RJC Realty Holding Corp. v Republic Franklin Ins. Co.*, 2 NY3d 158, 165 [2004]).

The gravamen of the SEC complaint was that defendant's *research analysts* were unduly influenced by investment banking concerns. Using the principle of ejusdem generis (*see 242-44 E. 77th St., LLC v Greater N.Y. Mut. Ins. Co.*, 31 AD3d 100, 103-104 [2006]), we find that influencing research analysts is not like the examples of investment banking work listed in the exclusion. Even if reasonable minds could differ on whether the exclusion applied, defendant (the insured) would be entitled to summary judgment (*see Belt Painting*, 100 NY2d at 387; *see also RJC Realty*, 2 NY3d at 165). Although defendant does not request partial summary judgment on this point, this Court has the power to, and hereby does, grant such relief (*see* CPLR 3212 [b]; *Chateau D' If Corp. v City of New York*, 219 AD2d 205, 209-210 [1996], *lv denied* 88 NY2d 811 [1996]). We note that plaintiffs have insisted this issue should be decided as a matter of law.

Under these circumstances, we find an issue of fact as to whether the portion of the settlement attributed to disgorgement actually represented ill-gotten gains or improperly acquired funds. The allegations against defendant were very different from those in *Vigilant Ins. Co. v Credit Suisse First Bos-*

*ton Corp.* (10 AD3d 528 [2004]). Furthermore, defendant submitted evidence the settlement amount was based on market share instead of being tied to the amount of commissions or fees it received.

Plaintiffs' argument that the $25 million payment for independent research and the $5 million for investor education are not covered by the insurance policies is unavailing. The policies cover "loss," not merely "damages." "Loss" includes, inter alia, "judgments" and "settlements." It is undisputed that the payments for independent research and investor education were part of a settlement; plaintiffs do not contend that these payments (as opposed to disgorgement) are uninsurable under New York law. The motion court did not find any triable issues of fact on this question, nor do we; hence, summary judgment is granted to defendant on this point. Concur—Tom, J.P., Andrias, Saxe and Marlow, JJ. [*See* 10 Misc 3d 1072(A), 2006 NY Slip Op 50047(U) (2006).]