[830 NYS2d 299]

CITY OF NEW YORK, Appellant, v EVANSTON INSURANCE COMPANY, Respondent.

Second Department, February 13, 2007

### APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Francis F. Caputo, Dona B. Morris, Brad M. Snyder* and *Eric Proshansky* of counsel), for appellant.

*Lester Schwab Katz & Dwyer, LLP*, New York City (*Eric A. Portuguese* and *Lisa Fleischmann* of counsel), for respondent.

### OPINION OF THE COURT

FISHER, J.

This appeal turns principally on the meaning of a single word in the blanket additional-insured endorsement of a commercial general liability insurance policy.

In April 1999, Scala Contracting Co., Inc. (hereinafter Scala), entered into an agreement with the City of New York to perform certain construction work on a sidewalk at Linden Boulevard and Malta Street in Brooklyn. The agreement, inter alia, required Scala to procure and maintain comprehensive general liability insurance that included an endorsement naming the City as an additional insured. Scala obtained a policy from the Evanston Insurance Company (hereinafter Evanston) containing a blanket provision that made the City an additional insured "only with respect to liability arising out of [Scala's] ongoing operations performed for [the City] and then only as respects any claim, loss or liability arising out of [Scala's] operations . . . and only if such claim, loss or liability is determined to be solely the negligence or responsibility of [Scala]."

On or about June 17, 1999, Oliver Lamb, an employee of Scala, allegedly was injured while working at the site when he was struck by two vehicles owned, leased, or operated by James Boynton and Iasia Bradley. Lamb commenced an action against both Boynton and Bradley, and Boynton, in turn, commenced a third-party action against Scala and the City, claiming, inter

alia, that they had failed to provide Lamb with a safe workplace. Insofar as relevant to this appeal, the third-party complaint alleged that Scala's actions or omissions "caused and/or contributed" to "the injuries and damages sustained by [Lamb]," and that Lamb "was caused to sustain serious and severe personal injuries as a result of the negligence of [Scala], its agents, servants and/or employees."

The City tendered the claim to Evanston for defense and indemnification, but the carrier denied coverage on two grounds. First, it asserted that the City had failed to provide it with timely notice of the claim and, second, it maintained that it had no duty, under the terms of the policy, to defend or indemnify the City unless and until a determination was made that Scala was 100% at fault for Lamb's injuries. The City thereupon commenced this action for a judgment declaring that Evanston was obligated to defend and indemnify it in the underlying action under the additional-insured endorsement. The City moved, and Evanston cross-moved, for summary judgment.

The Supreme Court determined that triable issues of fact existed as to whether the City's notice of claim was timely. That portion of the order is not at issue on this appeal inasmuch as the City concedes that there are triable issues of fact as to the timeliness of the notice of claim, and does not dispute that Evanston would have no duty to defend or indemnify should it ultimately be determined that the notice of claim was untimely (*see e.g. Brennan Bros. Co., Inc. v Lumbermens Mut. Cas. Co.,* 14 AD3d 525, 526 [2005]).

The court went on to find, however, that, under the terms of the additional-insured endorsement, Evanston's duty to defend and indemnify the City would be triggered only if Scala were shown, in the underlying action, to be 100% at fault for the happening of the accident. Thus, the court resolved the motion and cross motion for summary judgment by declaring, inter alia, that, unless it were determined in the underlying action that Lamb's injuries were 100% attributable to Scala's negligence, the City would not be entitled to coverage under the Evanston policy, regardless of whether it provided timely notice of the claim. The City appeals from that portion of the order.

It is undisputed that Lamb's claim arose out of Scala's ongoing operations performed for the City at the site. The point of contention is the meaning of the language in the policy that makes the City an additional insured only if Lamb's "claim, loss or liability is determined to be *solely* the negligence or responsibility of [Scala]" (emphasis supplied).

Evanston would read the word "solely" to mean, as the Supreme Court found, that the City would be an additional insured, entitled to defense and indemnification, only if Scala's negligence alone, and that of no other person or entity, were determined to be responsible for the accident. Evanston argues that such a determination could never be made here inasmuch as Boynton's third-party complaint against Scala seeks only contribution and not common-law indemnification, and that therefore Boynton has, in effect, conceded that his own negligence was a proximate cause of the accident.

The City, on the other hand, would read the word "solely" to refer only to an apportionment of fault as between Scala and itself, without regard to the potential liability of third parties. Thus, the City maintains that it would be an additional insured under the policy if Scala bore some responsibility for the accident and the City itself bore none. We agree with the City.

Where the language of a policy of insurance is ambiguous and susceptible of more than one reasonable interpretation, the parties may submit extrinsic evidence as an aid in construction; but when extrinsic evidence "will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court" (*State of New York v Home Indem. Co.*, 66 NY2d 669, 671 [1985]). Here, we find that, as used in the policy's blanket additional-insured endorsement, the word "solely" is ambiguous, and neither party suggests that extrinsic evidence will aid in ascertaining its intended meaning. Thus, the question is one of law for the court to determine. Under such circumstances, "[c]ourts have consistently construed ambiguous policy provisions in favor of coverage and against the insurer who drafted the policy" (*Primavera v Rose & Kiernan*, 248 AD2d 842, 843 [1998]; *see MDW Enters. v CNA Ins. Co.*, 4 AD3d 338, 340-341 [2004]; *Scalia v Equitable Life Assur. Socy. of U.S.*, 263 AD2d 537 [1999]). Indeed, "[i]n order for the insurer to prevail, it must demonstrate not only that its interpretation is reasonable but that it is the only fair interpretation" (*Primavera v Rose & Kiernan, supra* at 843).

Although, arguably, both of the proposed interpretations of the word "solely" are reasonable, Evanston's interpretation is hardly the only fair one. Insurance contracts are to be interpreted according to the reasonable expectations and purposes of ordinary businesspeople when making ordinary business contracts (*see General Motors Acceptance Corp. v Nationwide Ins. Co.*, 4 NY3d 451, 457 [2005]; *Belt Painting Corp. v TIG Ins.*

*Co.,* 100 NY2d 377, 383 [2003]). In our view, the City's interpretation best comports with such reasonable expectations and purposes here because it would exclude coverage only in those cases in which the putative additional insured is found to be partially at fault for the happening of the accident. By contrast, Evanston's interpretation would indiscriminately exclude coverage in every case in which any person or entity other than the named insured is in any degree at fault for the accident, irrespective of whether the putative additional insured bears any responsibility for it at all. Such extremely narrow coverage would be, at best, of minimal value to the reasonable businessperson (*cf. Belt Painting Corp. v TIG Ins. Co., supra* at 387; *Pepsico, Inc. v Winterthur Intl. Am. Ins. Co.,* 13 AD3d 599 [2004]).

Under these circumstances, therefore, the endorsement must be construed in favor of the City. Accordingly, we find that the City would be an "additional insured" under the policy if it is determined, in the underlying action, that Scala bears some responsibility for the happening of the accident and the City bears none.

This brings us, then, to the central question of Evanston's duty to defend the City in the underlying action.

> "It is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage' . . . 'If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be' " (*Automobile Ins. Co. of Hartford v Cook,* 7 NY3d 131, 137 [2006] [citations omitted]; *see Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310 [1984]; *New York City Hous. Auth. v Commercial Union Ins. Co.,* 289 AD2d 311, 312 [2001]; *79th Realty Co. v X.L.O. Concrete Corp.,* 247 AD2d 256 [1998]; *Zurich-American Ins. Cos. v Atlantic Mut. Ins. Cos.,* 139 AD2d 379, 384 [1988], *affd* 74 NY2d 621 [1989]).

In this case, Evanston would have the duty to defend the City in the underlying action if, liberally read, the allegations in the third-party complaint "give[ ] rise to the reasonable possibility of recovery under the policy" (*Belt Painting Corp. v TIG Ins. Co., supra* at 383). Conversely, a declaration that the carrier has no duty even to defend could be made "only if it could be concluded as a matter of law that there is no possible factual or

legal basis on which [Evanston] might eventually be held to be obligated to indemnify [the City] under any provision of the insurance policy" (*Spoor-Lasher Co. v Aetna Cas. & Sur. Co.*, 39 NY2d 875, 876 [1976]).

Here, the third-party complaint plainly alleges that Scala's negligence caused or contributed to Lamb's accident. Thus, there is at least a reasonable possibility that Scala, in the underlying action, will be found wholly or partially at fault in the happening of the accident, and that the City will be found to bear no responsibility for it, triggering Evanston's obligation to indemnify the City under the policy. Accordingly, subject to the Supreme Court's resolution of the outstanding issue of fact concerning the timeliness of the City's notice of claim, we find that Evanston has a duty to defend the City in the underlying action.

Evanston's remaining contentions are without merit.

Accordingly, the order is reversed insofar as appealed from, on the law, that branch of Evanston's cross motion which was for summary judgment is denied, and the City's motion is granted to the extent of declaring, subject only to the resolution of outstanding issues of fact concerning the timeliness of the City's notice of claim, that Evanston is obligated to defend the City in the underlying action, and the matter is remitted to the Supreme Court, Kings County, for a hearing to determine the issues of fact concerning the timeless of the City's notice of claim, and for entry, at the appropriate time, of a judgment making the appropriate declaration.

MILLER, J.P., KRAUSMAN and DILLON, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the defendant's cross motion for summary judgment is denied, and the plaintiff's motion is granted to the extent of declaring, subject only to the resolution of outstanding issues of fact concerning the timeliness of the plaintiff's notice of claim, that the defendant is obligated to defend the plaintiff in the underlying action and the matter is remitted to the Supreme Court, Kings County, for a hearing to determine the issues of fact concerning the timeliness of the plaintiff's notice of claim, and for entry, at the appropriate time, of a judgment making the appropriate declaration.