12-4063-cv
*Colonial Oil Indus. v. Indian Harbor Ins. Co.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1.  When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of June, two thousand thirteen.

PRESENT:
> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> BARRINGTON D. PARKER,
> *Circuit Judges.*

---

COLONIAL OIL INDUSTRIES INC.,

    *Plaintiff-Appellant,*

        v.                                                    No. 12-4063-cv

INDIAN HARBOR INSURANCE CO.,

    *Defendant-Appellee.*

---

**FOR PLAINTIFF-APPELLANT:**        JOHN W. SCHRYBER (Andrew N. Bourne, *on the brief*) Dickstein Shapiro LLP, Washington, DC *for Appellant Colonial Oil Inc.*

**FOR DEFENDANT-APPELLEE:**    RICHARD J. PRATT, Troutman Sanders, Washington, DC *for Appellee Indian Harbor Insurance Co.*

Appeal from the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 11, 2012 judgment of the District Court granting judgment on the pleadings for the defendant-appellee is **AFFIRMED**.

Plaintiff-appellant Colonial Oil Industries Inc. ("Colonial" or "plaintiff"), the insured, appeals from the District Court's entry of judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), in favor of its insurer, defendant-appellee Indian Harbor Insurance Co. ("defendant" or "Indian Harbor").  Colonial commenced this suit for breach of an insurance contract and seeks damages for Indian Harbor's refusal to defend and indemnify Colonial with respect to the costs incurred from the transfer of contaminated fuel oil.  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

The events giving rise to this action are undisputed.  Colonial is a corporation whose business involves the transportation, storage, and sale of fuel oil.  In the normal course of this business, Colonial received a delivery of twenty-five truckloads of oil during two weeks in September 2009 from a third-party seller, P&W, which were unloaded into one of Colonial's Aboveground Storage Tanks ("Tank 127") for storage; at the time the oil from P&W was unloaded, Tank 127 was already partially filled with oil.  Following these deliveries, a portion of the fuel from Tank 127 was also delivered to one of Colonial's customers, International Paper ("IP").  Subsequent to this latter delivery, it was discovered that the fuel oil delivered by P&W was contaminated with polychlorinated biphenyl ("PCB"), a pollutant, which resulted in harm to both Colonial and IP in the form of lost oil and decontamination and remediation costs.

Plaintiff sought coverage for these costs from Indian Harbor under its "Pollution and Remediation Legal Liability Policy" ("Policy").  The Policy provides that Indian Harbor will pay for costs "resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION."  (Policy, § I, ¶ A.)  The phrase "pollution condition" is defined as "[t]he discharge, dispersal, release, seepage, migration, or escape of POLLUTANTS into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water . . ." (*Id.* § II, ¶ R.)

2

Indian Harbor denied coverage and plaintiff commenced this action before the District Court for breach of contract.

The parties agreed before the District Court that New York law governed the Policy, *but see* note 2 and accompanying text, *post*, and that, under the Policy, the oil contaminated with PCB was a pollutant. *See Colonial Oil Indus., Inc. v. Indian Harbor Ins. Co.*, No. 11 Civ. 5018 (DAB), 2012 WL 3964747, at *2 (S.D.N.Y. Sept. 10, 2012). In considering plaintiff's claims, the District Court noted that "[p]laintiff's entire argument . . . turns on whether oil which is transferred from a tanker truck into another containment vessel (or from a containment vessel into a tanker truck) is 'discharged' as that term is used in the Policy even if no spill, leak, or other accidental release occurs." *Id.* at 3. The District Court went on to hold that

> read together in the context of the other terms with which it is placed in the Policy (e.g., "seepage", "migration", and "escape"), it is evident that a "discharge" only creates a Pollution Condition when the pollutant discharged is in some way released from its confinement. To hold otherwise would invite the absurd conclusion that a Pollution Condition exists any time any pollutant exists in any container of any kind, since—absent spontaneous generation—the pollutant must at some previous time have been unloaded from another vessel or poured forth into that container from elsewhere. Thus, the only plausible reading of the Policy is that it provides coverage in the event that a pollutant is discharged from containment into land, structures, the atmosphere, or water, *but not when, as here, the pollutant remains contained in vessels where it is intended to be kept and which were created for the very purpose of holding the pollutant until it is intentionally removed into a different container.*

*Id.* at *4 (emphasis supplied). Accordingly, the District Court entered judgment in favor of defendant on September 12, 2012. This timely appeal followed.

## DISCUSSION

"We review a judgment under Federal Rule of Civil Procedure 12(c) *de novo*, accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178 (2d Cir. 2013). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Because interpretation of an insurance agreement is a question of law, we review the district court's construction of the Policy *de novo*." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

3

The gravamen of plaintiff's argument on appeal, as before the District Court, is simply that the act of unloading the contaminated fuel oil for P&W's truck into Tank 127 created a "pollution condition" within the terms of the Policy by discharging a pollutant, PCB, into a structure (Tank 127).[1]

As a threshold matter, we note that the construction and enforcement of the Policy, by its express terms, is governed by New York law.[2] (Policy, § IX, ¶ L.) "When a dispute arises involving the terms of an insurance contract, New York insurance law provides that an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks omitted). "When the provisions are unambiguous and understandable, courts are to enforce them as written." *Id.* However, "[p]art of this threshold interpretation is the question of whether the terms of the insurance contract are ambiguous. An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person . . . who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (internal citations and quotation marks omitted).

Under New York law, insurance policies are read "in light of common speech and the reasonable expectations of a businessperson." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y. 2d 377, 383 (2003) (internal quotation marks omitted). For instance, "New York courts, in construing terms in [the related context of] pollution exclusions, favor a commonsense approach over a literal approach." *Parks Real Estate Purchasing Grp.*, 472 F.3d at 47 (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 144 (2d Dep't. 2004)). While the exact contractual language before

---

[1] Although not entirely clear, plaintiff on appeal seems to claim that the Policy was generally intended as a supplement to a more general commercial liability policy and that its terms should be therefore be interpreted by reference to pollution exclusion clauses in the latter type of document; working from this premise, plaintiff also notes a supposed split of authority in the views of different states in interpreting pollution exclusions, which it claims is relevant to interpreting the Policy at issue here. We find no merit to these arguments. Plaintiff has presented no evidence of a specific general commercial liability policy in this case. At oral argument, plaintiff insisted that it did have such a policy, but conceded that its general policy was not with the defendant. Moreover, as noted above, New York law governs the interpretation of the Policy, *see* note 2, *post*, making reference to the contract law of any other state immaterial.

Plaintiff also argues on appeal that the District Court "actually and necessarily relied" on "how a (presumptive) [commercial general liability] policy would apply" in construing the Policy at issue. Appellant's Br. 4-5. We disagree. As made clear in its opinion, the District Court's opinion was based on its view of "the only plausible reading of the Policy," *Colonial Oil Indus., Inc.*, 2012 WL 3964747, at *4, with a limited discussion of commercial general liability serving as a secondary justification for its reasoning.

[2] On appeal, plaintiff seems to imply, without elaboration, that the dispute might be governed by Georgia law simply because Colonial is domiciled in Georgia. The Policy's choice of law provision, however, is clear that New York law governs its construction and enforcement, (Policy, § IX, ¶ L), as was the District Court's recognition that parties stipulated to that fact. *See Colonial Oil Indus., Inc.*, 2012 WL 3964747, at *1.

us has not been addressed by New York courts, the Court of Appeals has said, in the context of pollution exclusions, that "'discharge' and 'dispersal'—are terms of art in environmental law used with reference to damage or injury caused by disposal or containment of hazardous waste." *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 654 (1993); *cf. id.* ("[T]he three places for discharge contemplated by the policy exclusion—into or upon land, the atmosphere, or any water course or body of water—read together support the conclusion that the clause was meant to deal with broadly dispersed environmental pollution."); *see also Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co.*, 344 F. Supp. 2d 915, 920 (S.D.N.Y. 2004) ("[D]amage from the discharge, dispersal, seepage, migration, release or escape are terms of art in environmental law, generally used to describe the improper disposal or containment of hazardous waste." (internal quotation marks omitted)); *Sphere Drake Ins. Co. v. Y.L. Realty Co.*, 990 F. Supp. 240, 243 (S.D.N.Y. 1997) (same).

These cases make clear that the "reasonable expectations of a businessperson" viewing the contested Policy language would be that it is intended to provide coverage for environmental harm resulting from the disposal or containment of hazardous waste. This case—which merely involves the unwitting introduction and transfer of polluted oil into containers otherwise meant to hold that oil–does not fall within those parameters. Accordingly, we conclude that the events giving rise to this action did not create a "pollution condition" under the Policy and affirm the judgment of the District Court.

We have reviewed all of plaintiff's arguments on appeal and find them to be without merit. Accordingly, we **AFFIRM** the September 11, 2012 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk