OPINION OF THE COURT
Shirley Werner Kornreich, J.
In this insurance action, plaintiffs seek a declaratory judgment that the defendant insurers are obligated to indemnify and defend them against claims for personal injury arising out of a fire at plaintiffs’ work site. Defendant Hudson Specialty Insurance Company (Hudson) moves to dismiss pursuant to CPLR 3211 (a) (1). Plaintiffs oppose. For the reasons that follow, the court grants the motion and dismisses Hudson from the case.
I Background
This is yet another action arising out of the tragic fire that occurred at 130 Liberty Street (formerly known as the Deutsche Bank building) on August 18, 2007, during which two firefighters lost their lives. The building, which had been severely damaged by the terrorist attack of September 11, 2001, had been conveyed in 2004 to the Lower Manhattan Development Corporation (LMDC) for purposes of redevelopment. LMDC hired plaintiffs URS Corporation and URS Corporation - New York (collectively, URS) to provide “owner representative services” in connection with the building (amended complaint ¶ 16). LMDC then retained Bovis as general contractor for the project to “deconstruct” the building. Certain other companies also were retained to perform services in connection with the project, including Site Safety, LLC (Site Safety), Regional Scaffolding & Hoisting Co. (Regional Scaffolding), and The John Galt Company (John Galt). Each of these companies procured insurance policies to indemnify them against any claims or litigation costs arising out of their work on the project and, according to URS, named URS as an additional insured: Bovis from defendant Zurich American Insurance Company (Zurich), Site Safety from Zurich and defendant Steadfast Insurance Company (Steadfast), and Regional Scaffolding from defendant Liberty Surplus Insurance Corporation (Liberty). Finally and most relevant here, John Galt purchased contractors pollution liability coverage from defendant Hudson (see affirmation of Matthew J. Gaul, Aug. 7, 2013, exhibit 2 [the Hudson policy]).
*393 Under the Hudson policy, the insurer was obligated to “pay on behalf of the insured those damages for bodily injury or property damage . . . that the insured becomes legally obligated to pay . . . [i]f the damages result from a pollution condition at any site where any insured ... is performing . . . any contracting or remediation operations,” subject to certain conditions (Hudson policy, part I [A]). A “pollution condition” was defined as “the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water which results in bodily injury or property damage” (Hudson policy, part II). Hudson had the “right and duty to provide for the defense of the insured with respect to a claim made against the insured” (id.). The contract explicitly noted that it did not provide commercial general liability (CGL) coverage (see Hudson policy, common policy declarations page & coverage part declarations).
Following the 2007 fire, a number of firefighters or their estates commenced actions (the underlying actions) against LMDC and others (including URS), seeking to hold them liable for death or injury caused by the fire. Specifically, the complaints allege, inter alia, that the defendants there failed to maintain working standpipes, emergency lighting or proper signage in the building, allowed the obstruction of stairways and did not clear away piles of flammable debris (Gaul affirmation, exhibits 4-11). As a result, it was alleged, the fire could not be timely suppressed, and the firefighters who were injured or died were unable to escape (id.). Claiming that it was covered as an additional insured under the abovementioned policies, URS presented defendants herein, including Hudson, with tenders for coverage, which were denied in whole or in part. On November 15, 2012, URS commenced the instant action by filing a verified complaint against Zurich and Steadfast. About seven months later, on the consent of all parties, URS filed an amended complaint adding Liberty and John Galt’s pollution insurer, Hudson, as defendants. Liberty answered; Hudson made the instant motion to dismiss, arguing that the underlying actions do not allege injuries arising out of a “pollution condition” and, therefore, are not covered by the Hudson policy.
II. Standards
On a motion to dismiss the court must accept as true the facts alleged in the complaint as well as all reasonable infer *394 enees that may be gleaned from those facts (Amaro v Gani Realty Corp., 60 AD3d 491 [2009]; Skillgames, LLC v Brody, 1 AD3d 247, 250 [1st Dept 2003], citing McGill v Parker, 179 AD2d 98, 105 [1992]; Mazzei v Kyriacou, 98 AD3d 1088, 1090 [2d Dept 2012]; see also Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]). The court is not permitted to assess the merits of the complaint or any of its factual allegations, but may only determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action (Skillgames, 1 AD3d at 250, citing Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). Dismissal on the basis of documentary evidence, per CPLR 3211 (a) (1), is warranted only where such evidence “conclusively establishes a defense to the asserted claims as a matter of law” (Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, 96 NY2d 300, 303 [2001], quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Deficiencies in the complaint may be remedied by affidavits submitted by the plaintiff (Amaro, 60 AD3d at 492). “However, factual allegations that do not state a viable cause of action, that consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by documentary evidence are not entitled to such consideration” (Skillgames, 1 AD3d at 250, citing Caniglia v Chicago Tribune-N.Y. News Syndicate, 204 AD2d 233 [1st Dept 1994]).
III. Discussion
Hudson argues that it has no duty to defend URS in the underlying actions, as its policy was intended to indemnify the insured against claims for environmental harm. As noted, the underlying actions allege that the various entities responsible for overseeing the deconstruction project negligently allowed fire hazards to be created which caused the plaintiff firefighters to be injured or killed by the fire which broke out in the building on August 18, 2007. For the most part, the complaints simply state that the relevant firefighter plaintiff was seriously injured by the fire in the course of the performance of his duties, through no fault of his own; two of the complaints allege smoke inhalation as a cause of death. Hudson maintains that none of these injuries could plausibly be held to have arisen out of a “pollution condition,” as that term is defined in the Hudson policy. In opposition, URS notes that two of the underlying actions mention “toxic smoke,” and argues that the August 18, 2007 fire constituted a “release” of smoke or other contaminant, thereby qualifying as a pollution condition.
*395 Hudson argues, in part, that its policy should be interpreted narrowly in light of the fact that the policy was clearly meant to supplement a CGL policy, since: (1) the Hudson policy itself notes that it does not provide CGL coverage; and (2) John Galt in fact procured a CGL policy from another carrier, third-party defendant American Empire Surplus Lines Insurance Company (American Empire). According to Hudson, these claims properly fall under the scope of the CGL policy rather than the Hudson policy, whose respective scopes, Hudson argues, were obviously meant to be mutually exclusive. Moreover, Hudson points to the fact that American Empire has not disclaimed coverage of the underlying actions.
However, John Galt’s CGL policy was not presented to the court, and it, thus, cannot draw any conclusions about that policy. Similarly, other than Hudson’s claims, it is not clear from the record that American Empire has accepted the tenders for coverage of the various parties allegedly insured under it. The only document from American Empire presented to this court, its answer to the third-party complaint of Zurich and Steadfast, invokes the “applicable provisions, terms, definitions, conditions, endorsements, limitations and exclusions of the American Empire Policy” as an affirmative defense against Zurich’s and Steadfast’s claims for contribution to the defense or indemnification of URS (American Empire answer ¶ 46). While it may very well be that American Empire has been defending the underlying actions under a CGL policy provided to John Galt, there is simply no proof of that in the record.
This motion turns on the interpretation of the Hudson insurance contract. As plaintiffs correctly note, as this is an insurance contract, ambiguities as to the extent of coverage are to be resolved in favor of plaintiff, the insured (Handelsman v Sea Ins. Co., 85 NY2d 96, 101 [1994]). Furthermore, Hudson’s duty to defend is broader than its obligation to indemnify, and it must defend if “the four corners of the complaint suggest... a reasonable possibility of coverage” (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 648 [1993]). Nonetheless, the policy, like most contracts, is to be read “in light of common speech and the reasonable expectations of a businessperson” (Belt Painting Corp. v TIG Ins. Co., 100 NY2d 377, 383 [2003] [internal quotation marks and citations omitted]). While any ambiguity ought to be resolved in plaintiffs’ favor, the law does not require the court to strain common sense or the English language to ensure that all claims against Hudson survive (see *396 e.g. Denihan Ownership Co., LLC v Commerce & Indus. Ins. Co., 37 AD3d 314, 315 [1st Dept 2007] [“plaintiff has not offered a reasonable interpretation of the exclusion in question so as to create an ambiguity”]).
There are, in fact, few cases that deal with interpretation of a pollution liability policy. As a result, interpretation of the language used by the Hudson policy to define the scope of coverage appears to be a question of first impression. However, there are a number of New York cases interpreting the pollution exclusion in CGL policies.
For example, interpreting a pollution exclusion phrased nearly identically to the Hudson policy’s definition of “pollution condition,” the Court of Appeals has stated that
“the three places for discharge contemplated by the policy exclusion—into or upon [the] land, the atmosphere, or any water course or body of water—read together support the conclusion that the clause was meant to deal with broadly dispersed environmental pollution . . . not the possibly confined environs of the . . . complaints” (Continental Cas. Co., 80 NY2d at 654 [holding exclusion did not necessarily apply to asbestos-related personal injury claims]).
The Court noted that the terms used “to describe the method of pollution—such as ‘discharge’ and ‘dispersal’—are terms of art in environmental law used with reference to damage or injury caused by disposal or containment of hazardous waste” (id., citing Atlantic Mut. Ins. Co. v McFadden, 413 Mass 90, 595 NE2d 762 [1992]).
Similarly, in Belt Painting Corp., the Court held that a pollution exclusion did not necessarily apply to claims arising from the inhalation of paint fumes, noting that it “strains the plain meaning, and obvious intent, of the language to suggest that these fumes . . . had somehow been ‘discharged, dispersed, released or escaped’ ” (100 NY2d at 388, quoting Meridian Mut. Ins. Co. v Reliman, 197 F3d 1178, 1184 [6th Cir 1999]). And, the Second Circuit, without relying on any particular language in the exclusion in question, has held that it is “appropriate to construe the standard pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution” (Stoney Run Co. v Prudential-LMI Commercial Ins. Co., 47 F3d 34, 37-38 [2d Cir 1995]).
Given the close identity between the traditional pollution exclusion provision and Hudson’s pollution coverage provision, *397 it would be logical to conclude that the two clauses share the same purpose and are complementary, with one meant to fill the gap in coverage created by the other. Indeed, faced with interpreting a pollution coverage policy worded similarly to the one here, under New York law, the Second Circuit has held that the policy was intended to provide coverage for “environmental harm” (Colonial Oil Indus. Inc. v Indian Harbor Ins. Co., 528 Fed Appx 71, 75 [2d Cir 2013]). In Colonial Oil, as here, the policy covered a “pollution condition” defined as “[t]he discharge, dispersal, release, seepage, migration, or escape of POLLUTANTS into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water” (id. at 73).
Here, URS does not advance an interpretation of the policy language which is sensible in light of common speech and the reasonable expectations of a businessperson. Even allowing the somewhat excessive stress the plaintiffs place on the stray references in two of the complaints to “toxic smoke,” an allegation of injury from some sort of poisonous material is not enough to qualify for coverage; the injury must be caused by the “discharge, dispersal, release or escape” of such contaminant “into or upon land, the atmosphere or any watercourse or body of water” (Hudson policy, part II). To read the terms “land,” “atmosphere” and “watercourse or body of water” as “everywhere” would render the modifying clause misleading and useless surplusage. Coverage provisions are not exempt from the general rule that words are presumed to have meaning (Bretton v Mutual of Omaha Ins. Co., 110 AD2d 46, 49-50 [1st Dept 1985]). Giving these words meaning, the court reads the policy as insuring against claims arising from “broadly dispersed environmental pollution” (see Continental Cas. Co., 80 NY2d at 654), not the confined environment found here. Accordingly, it is ordered that the motion of defendant Hudson Specialty Insurance Company to dismiss the amended complaint herein is granted, and the amended complaint is dismissed in its entirety as against said defendant, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further ordered that the action is severed and continued against the remaining defendants; and it is further ordered that the caption be amended to reflect the dismissal and that all future papers filed with the court shall bear the following amended caption:
*398 URS CORPORATION & URS CORPORATION - NEW YORK,
Index No.: 653952/2012 Plaintiffs,
-against-
ZURICH AMERICAN INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, & LIBERTY SURPLUS INSURANCE CORPORATION,
Defendants.
ZURICH AMERICAN INSURANCE COMPANY & STEADFAST INSURANCE COMPANY,
Third-Party Plaintiffs,
-against-
AMERICAN HOME ASSURANCE COMPANY, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, LIBERTY SURPLUS INSURANCE CORPORATION, SCOTTSDALE INSURANCE COMPANY,
ARCH SPECIALTY INSURANCE COMPANY, & COMMERCE AND INDUSTRY INSURANCE COMPANY,
Third-Party Defendants.