# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  February 26, 2015                518993
_____

BROOME COUNTY,

                    Respondent-
                    Appellant,

          v                                MEMORANDUM AND ORDER

THE TRAVELERS INDEMNITY
    COMPANY et al.,

                    Appellants-
                    Respondents.
_____


Calendar Date:  January 12, 2015

Before:  McCarthy, J.P., Lynch, Devine and Clark, JJ.

_____

        Robert G. Behnke, County Attorney, Binghamton, for appellants-respondents.

        Robinson & Cole, LLP, Hartford, Connecticut (Gregory P. Varga of counsel), for respondent-appellant.

_____


McCarthy, J.P.

        Cross appeals from an order of the Supreme Court (Schaewe, J.),  entered September 30, 2013 in Broome County, which, among other things, denied defendants' motion for summary judgment dismissing the complaint.

        Defendants[1] issued a first-party insurance policy to

_____

        [1]  Defendant The Travelers Indemnity Company actually issued the policy, while defendant The Travelers Companies, Inc. is a parent corporation.  For purposes of this appeal, we will treat

plaintiff covering certain of plaintiff's property, including a building in a government complex containing real property owned by plaintiff, the State and the City of Binghamton. During construction on a parking garage underneath a building that plaintiff owns, and during the policy's coverage period, construction work caused silica dust to migrate up an elevator shaft and disperse into all of the floors in plaintiff's building. After defendants disclaimed coverage for this incident, plaintiff initiated this action alleging that the property damage resulting from the spread of silica dust was a loss covered under the policy. Defendants moved for summary judgment dismissing the complaint and plaintiff cross-moved for summary judgment establishing coverage as a matter of law. Supreme Court found that a pollution exclusion in the policy did not bar coverage, but that there were issues of fact as to whether a faulty workmanship exclusion barred coverage. Thus, the court denied both parties' motions. Defendants appeal and plaintiff cross-appeals.

"[A]n insurer seeking to invoke a policy exclusion 'must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case'" (Villanueva v Preferred Mut. Ins. Co., 48 AD3d 1015, 1016 [2008], quoting Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 652 [1993]; accord Kramarik v Travelers, 25 AD3d 960, 962 [2006]). To determine whether a policy provision is ambiguous, courts are guided by "the reasonable expectations of the average insured upon reading the policy" (Matter of Mostow v State Farm Ins. Cos., 88 NY2d 321, 326-327 [1996]; accord Villanueva v Preferred Mut. Ins. Co., 48 AD3d at 1016). The meaning of any part of such a policy must be determined upon consideration of the policy as a whole (see Roebuck v State Farm Mut. Auto. Ins. Co., 80 AD3d 1126, 1128 [2011]). In addition, "[a]n insurance contract should not be read so that some provisions are rendered meaningless" (County of Columbia v Continental Ins. Co., 83 NY2d 618, 628 [1994]; see generally Vectron Intl., Inc. v Corning Oak Holding, Inc., 106 AD3d 1164, 1167 [2013]). Upon applying these rules of

them as united in interest.

construction, if "an insurance policy's meaning is not clear or is subject to different reasonable interpretations," such an ambiguity must be resolved in favor of the insured (Pepper v Allstate Ins. Co., 20 AD3d 633, 635 [2005]; accord White v Rhodes, 34 AD3d 951, 952 [2006]).  Because we find that both policy exclusions apply to bar coverage here, we grant defendants' motion and dismiss the complaint.

Defendants were entitled to summary judgment based on the pollution exclusion clause.  Pursuant to that exclusion in the policy, defendants will not cover loss resulting from the "[d]ischarge, dispersal, seepage, migration, release or escape of 'pollutants.'"  As defined in the policy, "'[p]ollutants' means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthy or hazardous building materials (including but not limited to asbestos and lead products or materials containing lead)."  The record contains unrebutted evidence that silica dust can cause lung disease and respiratory problems, placing such dust within the policy definition of a pollutant as "unhealthy or hazardous building material[]," as well as a "solid . . . irritant or contaminant" (see American Heritage Realty Partnership v LaVoy, 209 AD2d 749, 750 [1994]).

We disagree with plaintiff's argument that Belt Painting Corp. v TIG Ins. Co. (100 NY2d 377 [2003]) requires the opposite result.  In that case, the Court of Appeals interpreted the provisions in a commercial general liability policy — third-party insurance — and found that injury caused by "'discharge, dispersal, seepage, migration, release or escape'" did not unambiguously apply "to ordinary paint or solvent fumes that drifted a short distance from the area of the insured's intended use and allegedly caused inhalation injuries to a bystander" (id. at 387-388).  The Court there relied on the fact that words such as discharge and dispersal — the policy's terms describing the method of pollution — were "terms of art in environmental law" referring to damage "caused by disposal or containment of hazardous waste" (id. at 387 [internal quotation marks and citation omitted]).  Here, however, if the words "[d]ischarge, dispersal, seepage, migration, release or escape" are read as not intended to describe short migratory events where the relevant

contaminant remains on the plaintiff's property and does damage to it, then the exclusion has no significance at all in this first-party policy, especially to the portion of the definition of pollutants (not found in the policy at issue in Belt Painting Corp.) addressing "building materials" including asbestos and lead paint.  Applying the only reasonable reading that gives the pollution exclusion here a meaning under a first-party insurance policy, that exclusion precludes coverage for the loss at issue (see Space v Farm Family Mut. Ins. Co., 235 AD2d 797, 798-799 [1997]; American Heritage Realty Partnership v LaVoy, 209 AD2d at 750).  Thus, defendants were entitled to summary judgment dismissing the complaint on the basis of that exclusion.

Defendants are also entitled to summary judgment dismissing the complaint based on the faulty workmanship clause.  The policy exclusion for faulty workmanship states that defendants "will not pay for loss or damage caused by or resulting from . . . [f]aulty, inadequate or defective . . . (2) . . . workmanship, repair, construction, renovation [or] remodeling."  Plaintiff conceded, in its response to interrogatories, that the loss here resulted from the absence of adequate protective barriers to prevent construction dust from infiltrating the elevator shaft and the building.  The unrebutted record evidence establishes that a flawed process on the part of the contractors led to the loss at issue.  Despite this proof, plaintiff argues that this exclusion is ambiguous, and must therefore be construed in plaintiff's favor to permit coverage, because faulty workmanship can relate to "the flawed quality of a finished product" or to a "flawed process" in the construction work.

While dictionaries include these two possible definitions of "workmanship" (see e.g. Random House Webster's Unabridged Dictionary 2189 [2d ed 1998]), plaintiff's argument considers the term workmanship out of context to create an ambiguity. Considering that term in context leads to the reasonable conclusion that the relevant clause unambiguously excludes losses resulting from faulty workmanship under both definitions. Subdivision (2) of the exclusion clause, quoted above, is sandwiched between subdivisions that preclude coverage for "[f]aulty, inadequate or defective (1) [p]lanning, zoning, development, surveying, siting . . . [or] (3) [m]aterials used in

repair, construction, renovation or remodeling; or (4) [m]aintenance."  Subdivision (1) clearly relates to the process, as there is no finished product created on real property merely through planning, zoning or the other listed activities.  Similarly, subdivision (4) relates to process because there is generally no cognizable finished product as the result of maintenance.  On the other hand, subdivision (3), dealing with materials, relates to the resulting finished product rather than the process.  Reading all of these subdivisions together and considering the clause as a whole, including its use of the disjunctive "or," the average insured would reasonably expect the exclusion to apply to faulty workmanship whether it was caused by a flawed process or measured by the flawed quality of the finished product (see Wider v Heritage Maintenance, Inc., 14 Misc 3d 963, 974-975 [2007]; Schultz v Erie Ins. Group, 754 NE2d 971, 976-977 [Ind Ct App 2001]; see also Village of Potsdam v Home Indem. Co., 52 AD2d 278, 280 [1976]; compare Maxwell v State Farm Mut. Auto. Ins. Co., 92 AD2d 1049, 1050 [1983]; but see Allstate Ins. Co. v Smith, 929 F2d 447, 449-450 [9th Cir 1991]).  Contrary to plaintiff's argument that the clause is ambiguous because a term within it can be read in two different ways, an ambiguity is not created if the policy is written to exclude coverage under both definitions.

Even if we accept plaintiff's legal argument that this exclusion should only apply where the contractors performing the construction work — and who were therefore responsible for the faulty workmanship that resulted in the asserted loss — were agents of the insured, we disagree with plaintiff's factual assertion that the workers here were not its agents.  Plaintiff entered into a written agreement making the State its agent for purposes of contracting out the construction work on the parking garage, and the State hired the construction contractors pursuant to that agreement.  Hence, the workers were plaintiff's agents.

Additionally, the ensuing loss exception does not apply here.  "Where a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk" (Narob Dev. Corp. v Insurance Co. of N.

Am., 219 AD2d 454, 454 [1995], lv denied 87 NY2d 804 [1995] [citations omitted]).  The faulty workmanship here was the failure to erect adequate dust barriers, and the resulting loss came from the spread of dust.  Thus, the loss was directly related to the original excluded risk (see id.).  Inasmuch as no ambiguity exists in the faulty workmanship exclusion, plaintiff has conceded that the loss was caused by a flawed construction process and no exception applies, the faulty workmanship clause precludes coverage for the loss at issue.  Hence, defendants are entitled to dismissal of the complaint.

Lynch, Devine and Clark, JJ., concur.


ORDERED that the order is modified, on the law, with costs to defendants, by reversing so much thereof as denied defendants' motion; motion granted, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court