Tonoga, Inc. v New Hampshire Ins. Co. (2022 NY Slip Op 00094)





Tonoga, Inc. v New Hampshire Ins. Co.


2022 NY Slip Op 00094


Decided on January 6, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 6, 2022

532546
[*1]Tonoga, Inc., Doing Business as Taconic, Appellant,
v
New Hampshire Insurance Company et al., Respondents.

Calendar Date:November 17, 2021

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Whiteman Osterman & Hanna LLP, Albany (Jon E. Crain of counsel), for appellant.
Bates Carey LLP, Chicago, Illinois (Agelo L. Reppas of counsel) and Kennedys CMK LLP, New York City (William J. Brennan of counsel), for respondents.



Clark, J.
Appeal from an order of the Supreme Court (Ceresia, J.), entered May 14, 2020 in Rensselaer County, which, among other things, granted defendants' motion for summary judgment dismissing the second amended complaint.
Since 1961, plaintiff and/or its corporate predecessors have owned and operated a manufacturing facility located in the Town of Petersburg, Rensselaer County where they produce materials coated with polytetrafluoroethylene (hereinafter PTFE). The manufacturing process at the facility historically involved the use of perfluorooctanoic acid and its predecessor, ammonium perfluorooctanoate (hereinafter collectively referred to as PFOA), as well as perfluorooctanesulfonic acid and its predecessor, perfluorooctane sulfonate (hereinafter collectively referred to as PFOS). Beginning in 2006, the Environmental Protection Agency (hereinafter EPA) began studying the health effects of exposure to PFOA and PFOS, establishing standards for allowable levels of the chemical compounds in drinking water. Plaintiff discontinued its use of PFOA and PFOS as PTFE processing agents sometime in 2013, and, in January 2016, the Department of Environmental Conservation (hereinafter DEC) added PFOA to the list of regulated hazardous substances by emergency regulation (see 6 NYCRR 597.3). It was discovered soon thereafter that PFOA and/or PFOS concentrations in Petersburg's municipal water supply exceeded advisory levels, and other excessive concentrations of PFOA and/or PFOS were also later identified, including in leachates from a municipal landfill. In May 2016, DEC designated plaintiff's facility a state Superfund site and declared it to be a significant threat to public health (see ECL 27-1313). Plaintiff, without admitting to liability, fault or wrongdoing, entered into a consent agreement with DEC in November 2016 that, among other things, required plaintiff to assist in certain remedial measures.
Over the next few years, multiple lawsuits were brought against plaintiff, each generally alleging that it negligently allowed PFOA and/or PFOS to pollute local water supplies, air and soil, causing the plaintiffs in the underlying actions certain bodily injury and property damage. During portions of the period in which it is alleged to have been negligent, plaintiff had certain insurance,[FN1] including policies with defendant Granite State Insurance Company from July 12, 1979 through July 12, 1982 and defendant New Hampshire Insurance Company from July 12, 1986 through July 12, 1987. Each policy generally required the insurer to indemnify plaintiff for all damages stemming from claims of bodily injury and property damage caused by a covered occurrence and to defend it in any suit on account of same, even if the suit was "groundless, false or fraudulent." Both policies, however, excluded, among other occurrences, coverage for bodily injury and property damage caused by pollution, though the Granite State policy included an exception to its pollution exclusion [*2]if an occurrence was "sudden and accidental." Plaintiff informed defendants of the aforementioned lawsuits and its dealings with DEC, requesting defense and indemnification as to all suits and the administrative proceeding, but defendants disclaimed coverage due to the pollution exclusions in their respective policies.
Plaintiff commenced this action seeking, among other things, a declaration that defendants are obligated to defend it in the underlying suits. Following joinder of issue, plaintiff and defendants filed contemporaneous motions for summary judgment that, in pertinent part, sought a ruling on whether the pollution exclusions applied. Supreme Court concluded that the exclusions applied as a matter of law as PFOA and PFOS were unambiguously pollutants within the meaning of the policies and, as to the Granite State policy, the alleged discharge was neither sudden nor accidental; as such, neither defendant was obligated to defend plaintiff in the underlying suits. The court accordingly granted defendants' motion, dismissing the second amended complaint, and plaintiff appeals.
The issue presented on appeal concerns defendants' duty to defend plaintiff in the underlying suits under their respective insurance policies, not their duty to indemnify plaintiff. An insurer's duty to defend is "exceedingly broad" (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 648 [1993] [internal quotation marks and citation omitted]), broader than its duty to indemnify, and an insurer will be found to have a duty to defend if the allegations against the insured "state a cause of action that gives rise to the reasonable possibility of recovery under the policy" (Belt Painting Corp. v TIG Ins. Co., 100 NY2d 377, 383 [2003]; see Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66, 73 [1989]; International Paper Co. v Continental Cas. Co., 35 NY2d 322, 326-327 [1974]). In other words, an insurer must be relieved of its duty to defend a suit if it can be "concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy" (Erdman v Eagle Ins. Co., 239 AD2d 847, 849 [1997] [internal quotation marks, brackets, emphasis and citations omitted], appeal dismissed and lv denied 90 NY2d 926 [1997]; see Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d 621, 631 [1997]; Borg-Warner Corp. v Insurance Co. of N. Am., 174 AD2d 24, 36 [1992], lv denied 80 NY2d 753 [1992]).
To establish that an insurance policy exclusion applies as a matter of law, so as to exclude coverage for otherwise insured occurrences, it is the insurer's burden to "establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation[] and applies in the particular case" (Broome County v Travelers Indem. Co., 125 AD3d 1241, 1241-1242 [2015] [internal quotation [*3]marks and citations omitted], lv denied 25 NY3d 908 [2015]; see Belt Painting Corp. v TIG Ins. Co., 100 NY2d at 383; Westview Assoc. v Guaranty Natl. Ins. Co., 95 NY2d 334, 340 [2000]; Continental Cas. Co. v Rapid-American Corp., 80 NY2d at 652). "As with the construction of contracts generally, unambiguous provisions of an insurance [policy] must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (Universal Am. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 25 NY3d 675, 680 [2015] [internal quotation marks and citations omitted]; see J.P. Morgan Sec. Inc. v Vigilant Ins. Co., ___ NY3d ___, ___, 2021 NY Slip Op 06528, *3 [2021]; White v Continental Cas. Co., 9 NY3d 264, 267 [2007]). In determining whether a provision is ambiguous, the insurance policy must be read "in light of common speech" as well as "the reasonable expectations of a businessperson" upon reading the policy (Belt Painting Corp. v TIG Ins. Co., 100 NY2d at 383 [internal quotation marks and citation omitted]; see Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d at 633; Broome County v Travelers Indem. Co., 125 AD3d at 1242). "[I]f an insurance policy's meaning is not clear or is subject to different reasonable interpretations, such an ambiguity must be resolved in favor of the insured" (Broome County v Travelers Indem. Co., 125 AD3d at 1242 [internal quotation marks and citation omitted]; see Belt Painting Corp. v TIG Ins. Co., 100 NY2d at 383; Westview Assoc. v Guaranty Natl. Ins. Co., 95 NY2d at 340).
The Granite State policy employs the standard "qualified pollution exclusion" clause that appeared in many policies issued between the early 1970s and 1985 (see generally Belt Painting Corp. v TIG Ins. Co., 100 NY2d at 385). The clause broadly excludes from coverage damages "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water," but excepts "sudden and accidental" discharge, dispersal, release or escape. The New Hampshire policy, as amended, contains an "absolute" or "total" pollution exclusion clause, excluding from coverage damages "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: (a) at or from premises owned, rented or occupied by the named insured; (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste; (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or (d) at or from any site or location on which the named insured or any contractors [*4]or subcontractors working directly or indirectly on behalf of the named insured . . . are performing operations."[FN2] This policy defines a "[p]ollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."
Contrary to plaintiff's contention, whether a substance is unambiguously an irritant, contaminant or pollutant within the meaning of a pollution exclusion is necessarily situational (see Space v Farm Family Mut. Ins. Co., 235 AD2d 797, 798-799 [1997]; see also Belt Painting Corp. v TIG Ins. Co., 100 NY2d at 378-388), and, under these facts, it is clear that PFOA and PFOS are pollutants within the meaning of the exclusions. In the underlying actions, it is alleged that, since 1961, plaintiff's manufacturing generated PFOA and PFOS byproducts and waste materials that were in turn discharged into the environment as part of plaintiff's routine processes. Fabrics were soaked in solutions containing PFOA and/or PFOS, those fabrics were processed in industrial ovens where the heat vaporized a portion of the solution and that vapor was in turn discharged through the facility's smokestacks. Microparticles from that vapor were ultimately deposited onto soil surrounding the facility and, from there, seeped into the groundwater. Plaintiff's employees are alleged to have poured the PFOA and/or PFOS solution down floor drains and sinks, and water used to rinse manufacturing equipment similarly ran into drains; PFOA and/or PFOS is alleged to have traveled through the facility's septic system and into the soil and groundwater. Employees routinely transported waste containing PFOA and/or PFOS, such as sludge and rags, to the municipal landfill, where the substances eventually leached into the soil and groundwater. The damages resulting from this sort of broadly dispersed environmental harm fall squarely within pollution exclusions such as these — regardless of whether a particular substance is specifically named as a pollutant in an insurance policy, whether a substance was understood to have a detrimental effect on the environment at the time the policy was entered into or whether pollution was an intended result (see Town of Harrison v National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d 308, 316 [1996]; Gold Fields Am. Corp. v Aetna Cas. & Sur. Co., 295 AD2d 289, 289-290 [2002]; Space v Farm Family Mut. Ins. Co., 235 AD2d at 798-799; Cannon Constr. Co. v Liberty Mut. Ins. Co., 227 AD2d 364, 365 [1996]; compare Belt Painting Corp. v TIG Ins. Co., 100 NY2d at 387-388; Pepsico, Inc. v Winterthur Intl. Am. Ins. Co., 13 AD3d 599, 600 [2004], lv dismissed 4 NY3d 882 [2005]; Roofers' Joint Training, Apprentice & Educ. Comm. of W. N.Y. v General Acc. Ins. Co. of Am., 275 AD2d 90, 92-93 [2000]; Miano v Hehn, 206 AD2d 957, 958-959 [1994]; Karroll v Atomergic Chemetals Corp., 194 AD2d 715, 715 [1993], lv dismissed 82 NY2d 920 [1994]). Thus, Supreme Court properly granted [*5]defendants' motion dismissing the action against New Hampshire.\
Further analysis is required as to the qualified pollution exclusion in the Granite State policy. "Once an insurer has satisfied its burden of establishing that the underlying complaint alleges damages attributable to the discharge or release of a pollutant into the environment, thereby satisfying the basic requirement for application of the pollution coverage exclusion provision, the burden shifts to the insured to demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within the sudden and accidental discharge exception to exclusion of pollution coverage, or to show that extrinsic evidence exists that the discharge was in fact sudden and accidental" (Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d at 634; see Superhost Hotels Inc. v Selective Ins. Co. of Am., 160 AD3d 1162, 1164 [2018]; Redding-Hunter, Inc. v Aetna Cas. & Sur. Co., 206 AD2d 805, 807 [1994], lv denied 86 NY2d 709 [1995]; County of Fulton v United States Fid. & Guar. Co., 195 AD2d 864, 865 [1993]). "In determining whether the underlying complaint can be read as even potentially bringing the claim within the sudden and accidental exception to the exclusion of pollution coverage, a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable" (Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d at 634-635 [internal quotation marks and citation omitted]; Westpoint Intl., Inc. v American Intl. S. Ins. Co., 71 AD3d 561, 562 [2010]; Durant v North Country Adirondack Coop. Ins. Co., 24 AD3d 1165, 1166 [2005]).
The allegations in the underlying complaints place plaintiff's actions "'solely and entirely within the policy['s] exclusions'" (Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d at 73, quoting International Paper Co. v Continental Cas. Co., 35 NY2d at 325; see Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 312 [1984]). Plaintiff highlights allegations such as the "improper[]dumping" or "spilling" of solutions containing PFOA and/or PFOS down drains as proof sufficient to establish that at least some of the subject environmental pollution could have been a sudden and accidental occurrence. Plaintiff's limited examples, however, exemplify why the environmental pollution alleged here was neither abrupt nor unintentional. Rather, allegations that a solution was dumped over a period of many years suggests "the opposite of suddenness" (Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d at 635; see Borg-Warner Corp. v Insurance Co. of N. Am., 174 AD2d at 31), and, as a matter of law, volitional, long-term discharge of a substance cannot be viewed as unintended or unexpected (see Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d at [*6]72-73; Bresky v Ace Ina Holdings Inc., 287 AD2d 912, 913 [2001]; Rheem Mfg. Co. v Home Indem. Co., 282 AD2d 316, 317 [2001]).
We are also not persuaded that the references to there "likely" being "yet other ways" in which PFOA and/or PFOS was discharged into the environment by plaintiff — to be uncovered during discovery in the underlying actions — are adequate to require defense of this action, given that the gravamen of each suit is decidedly plaintiff's knowing discharge of PFOA and/or PFOS as part of its routine manufacturing processes. Plaintiff has failed to proffer a reasonable interpretation of the underlying complaints to bring the suits against it within the pollution exclusion exception in the Granite State policy (see Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d at 73; Redding-Hunter, Inc. v Aetna Cas. & Sur. Co., 206 AD2d at 807-808; County of Fulton v United States Fid. & Guar. Co., 195 AD2d at 865-866; Hitchings v Home Ins. Co., 190 AD2d 1030, 1030 [1993], lv denied 82 NY2d 652 [1993]; Rosen v CNA Ins. Co., 182 AD2d 1090, 1090 [1992], lv denied 80 NY2d 757 [1992]; Town of Moreau v Orkin Exterminating Co., 165 AD2d 415, 419 [1991]; compare Schwamb v Fireman's Ins. Co. of Newark, N.J., 41 NY2d 947, 948-949 [1977]; City of Kingston v Harco Natl. Ins. Co., 46 AD3d 1320, 1322 [2007], lv dismissed 10 NY3d 822 [2008]; Niagara County v Utica Mut. Ins. Co., 80 AD2d 415, 420-421 [1981], lvs dismissed 54 NY2d 608, 831 [1981]). Accordingly, neither defendant is obligated to defend plaintiff in the underlying suits, and there is thus no basis upon which to disturb Supreme Court's decision.
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: It is no longer disputed that plaintiff succeeded to the rights of its corporate predecessors as the named insured on the policies.

Footnote 2: The New Hampshire policy also does not cover "any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants."