87 Uptown Rd., LLC v Country Mut. Ins. Co. (2024 NY Slip Op 01362)

87 Uptown Rd., LLC v Country Mut. Ins. Co.

2024 NY Slip Op 01362

Decided on March 14, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 14, 2024

CV-22-2347
[*1]87 Uptown Road, LLC, Appellant,
v
Country Mutual Insurance Company, Respondent.

Calendar Date:January 10, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, McShan and Powers, JJ.

Lynn Law Firm, LLP, Syracuse (Patricia A. Lynn-Ford of counsel), for appellant.
Rupp Pfalzgraf LLC, Buffalo (Christopher J. Sasiadek of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (Mark G. Masler, J.), entered December 14, 2022 in Tompkins County, which granted defendant's motion for summary judgment dismissing the complaint.
Plaintiff is the owner of an apartment complex known as University Park Apartments located in the City of Ithaca, Tompkins County. The complex consists of 11 apartment buildings,[FN1] and was covered by an insurance policy issued by defendant. This policy was in effect when a fire occurred in October 2019. The fire destroyed one residential building, denoted as building D, and caused superficial external damage to several other buildings. While building D was rendered uninhabitable, tenants in the other buildings were not dispossessed. Shortly thereafter, plaintiff filed a claim for property damage and loss of business income created by the loss of rental payments. With regard to the loss of business income claimed, plaintiff included both the lost rental income from the dispossessed tenants of building D, as well as rents lost as a result of tenants in other buildings who, according to plaintiff, vacated the premises as a result of the various inconveniences attendant to the fire and subsequent rebuilding period.[FN2] Defendant paid the claim for property damage [FN3] but limited its payment for loss of business income to lost rents occasioned by the dispossession of tenants in building D.
In May 2021, plaintiff commenced this action seeking, as relevant here, the difference between its claim for loss of business income and the amount paid by defendant. After joinder of issue and completion of discovery, defendant moved for summary judgment dismissing the complaint, and Supreme Court granted the motion. The court found the insurance policy unambiguous and that its coverage provides only for "lost business income which is caused by direct physical loss or damage to property at the described premises." Plaintiff appeals, and we affirm.
"In determining a dispute over insurance coverage, we first look to the language of the policy. As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 681-682 [2017] [internal quotation marks and citations omitted]; see Tonoga, Inc. v New Hampshire Ins. Co., 201 AD3d 1091, 1094 [3d Dept 2022]). "The purpose of business interruption insurance is to indemnify the insured against losses arising from inability to continue normal business operation and functions due to the damage sustained as a result of the hazard insured against" (Howard Stores Corp. v Foremost Ins. Co., 82 AD2d 398, 400 [1st Dept 1981] [citations omitted], affd 56 NY2d 991 [1982]; accord Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d 187, 194-195 [2008]; Binghamton Precast & Supply Corp. v Liberty Mut. Fire Ins. Co., 182 AD3d [*2]721, 723 [3d Dept 2020]).
As relevant here, the policy provides coverage for "the actual loss of [b]usiness [i]ncome you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a [c]overed [c]ause of [l]oss." Additionally, the policy also provides for "extended business income" loss incurred during the period that "begins on the date property . . . is actually repaired, rebuilt or replaced and 'operations' are resumed." Importantly, as with the aforementioned loss of business income coverage, the "[l]oss of [b]usiness [i]ncome must be caused by direct physical loss or damage at the described premises caused by or resulting from any [c]overed [c]ause of [l]oss." With respect to this additional coverage, "suspension means: (a) [t]he partial slowdown or complete cessation of your business activities; or (b) [t]hat a part or all of the described premises is rendered untenantable."
Defendant met its prima facie burden by producing evidence that the buildings, other than building D, were not severely damaged, destroyed or rendered uninhabitable, and thus did not trigger compensation for loss of business income for these other buildings under either the business income loss or extended business income loss provisions of the policy.[FN4] The burden then shifted to plaintiff to establish that the loss occurred and the applicability of the policy (see United States Dredging Corp. v Lexington Ins. Co., 99 AD3d 695, 696 [2d Dept 2012]; Howard Stores Corp. v Foremost Ins. Co., 82 AD2d at 401).
Plaintiff, chiefly relying on the "extended business income" provision of the policy, contends that Supreme Court erred in narrowly limiting coverage to those units that were damaged from the fire, causing them to be uninhabitable. Plaintiff argues that the policy's "extended business income" loss language defines suspension of business as a partial slowdown in business activities and, as such, extends the loss of business income to include tenants of buildings that were not damaged by the fire, but nonetheless vacated due to the proximity of construction activity and loss of the pool and parking. We disagree.
Initially, we agree with Supreme Court that the provisions of the insurance contract are unambiguous. Typically, for business interruption insurance to be triggered, there must be a " 'total interruption or cessation' of operations" (Broad St., LLC v Gulf Ins. Co., 37 AD3d 126, 132 [1st Dept 2006], quoting 54th St. Ltd. Partners v Fidelity & Guar. Ins. Co., 306 AD2d 67, 67 [1st Dept 2003]). Here, the provision for extended business income loss, which defines suspension as a "partial slowdown" or "that a part of the premises is rendered untenantable," afforded plaintiff coverage for a partial loss of business income, even though plaintiff continued to operate its apartment [*3]complex and derive income from it (see Midland Academy of Advanced and Creative Studies v Hamilton Mut. Ins. Co., 2018 WL 6505368, *7-8, 2018 US Dist LEXIS 208488, *18-21 [ED Mich, Dec. 11, 2018, No. 17-cv-13790]).
Next, we turn to the policy's language that "the loss of business income must be caused by direct physical loss or damage at the described premises caused by or resulting from a covered . . . loss." The Court of Appeals has recently considered the meaning of "business interruption losses directly resulting from direct physical loss or damage" in Consolidated Rest. Operations, Inc. v Westport Ins. Corp. (___ NY3d ___, 2024 NY Slip Op 00795 [2024]) and determined that a material alteration or a complete and persistent dispossession of the insured property is required for reimbursement of loss of business income (id. at *2). Plaintiff failed to adduce any evidence that the fire affected the physical integrity or structure of buildings other than building D, that there was a need to repair or replace property in these other buildings, or that direct damage from the fire caused tenants in these buildings to be dispossessed. Instead, the loss of business income to buildings other than building D was due to other reasons, including, conceivably, the inconvenience attendant to the fire. However, inconvenience alone, absent direct damage, is not enough to afford coverage (see id. at *5). Accordingly, we agree with Supreme Court that no issue of fact exists as to whether the lost rental income from tenants in buildings other than building D constitutes loss of business income, and affirm Supreme Court's finding that defendant is entitled to summary judgment (see Yar-Lo, Inc. v Travelers Indem. Co., 130 AD3d 1402, 1404 [3d Dept 2015]).
Clark, J.P., Lynch, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The premises consist of approximately 200 apartment units in buildings designated A-K, an administrative building, a swimming pool, parking lots and common areas.

Footnote 2: Plaintiff alleges that a number of tenants purportedly vacated due to the inconvenience caused by the proximate construction, temporary loss of use of the pool and temporary reduction of parking spaces.

Footnote 3: Plaintiff does not contest the amount paid for property damage.

Footnote 4: In light of such determination, plaintiff's argument that defendant did not meet its prima facie burden as to the calculation of the amount of damages has been rendered academic.