Yeshiva Gedolah Zichron Moshe v Church Mut. Ins. Co. (2024 NY Slip Op 06256)

Yeshiva Gedolah Zichron Moshe v Church Mut. Ins. Co.

2024 NY Slip Op 06256

Decided on December 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 12, 2024

CV-23-0993
[*1]Yeshiva Gedolah Zichron Moshe, Appellant,
v
Church Mutual Insurance Company, Respondent, et al., Defendant.

Calendar Date:October 10, 2024

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Mackey, JJ.

Anderson Kill PC, Newark, New Jersey (Steven J. Pudell of counsel), for appellant.
Strongin Rothman & Abrams, LLP, New York City (David Abrams of counsel), for respondent.

Mackey, J.
Appeal from an order of the Supreme Court (Stephan G. Schick, J.), entered May 9, 2023 in Sullivan County, which, among other things, granted a motion by defendant Church Mutual Insurance Company for summary judgment dismissing the complaint against it.
In May 2018, prior to commencing construction of a new elementary school in the Town of Fallsburg, Sullivan County, plaintiff secured $2.7 million of builder's risk coverage from defendant Church Mutual Insurance Company (hereinafter defendant).[FN1]
Pursuant to the policy's "Need for Adequate Insurance" (hereinafter NFAI) provision, plaintiff was obligated to maintain builder's risk coverage in an amount equal to the projected value of the building upon completion. The policy specified that plaintiff's failure to maintain the required level of insurance would result in any claim being reduced in proportion to the deficiency in coverage.
In December 2018, plaintiff requested that defendant Fairmont Insurance Brokers, Ltd. — a third-party broker unaffiliated with defendant — obtain an increase in the limits of the policy to $3.5 million, commensurate with an increase in the projected value of the building at the time of completion.[FN2]
 Fairmont allegedly sent an email to defendant requesting the increased coverage, and indicated to plaintiff that it had done so. However, the request was never approved by defendant's underwriting staff and no increase in coverage was ever issued.[FN3]
Nevertheless, Fairmont provided plaintiff with an insurance "binder" in defendant's name, indicating that the property was insured for $3.5 million. It is undisputed that Fairmont did not have defendant's authority to issue the binder.
The policy was renewed in early January 2020 and defendant mailed and emailed a copy of the renewed policy to plaintiff. As relevant here, it provided builder's risk coverage in the same amount as in the original policy, $2.7 million. Plaintiff does not contest that no one in its offices read the renewed policy upon its receipt, so it was unaware that the coverage had not been increased. Unfortunately, a few weeks later, the largely completed elementary school was destroyed by fire and plaintiff submitted a claim for its loss, totaling $2,333,227.50. Citing the NFAI provision in the policy, defendant declined to pay the full amount of the claim. Rather, defendant asserted that it was obligated to pay only approximately 75% of the loss (less a $5,000 deductible). Defendant calculated that percentage by dividing the amount of plaintiff's coverage, $2.7 million, by the projected value of the building at completion, $3,574,503.[FN4]
Applying the resulting percentage, defendant paid $1,744,920.62 on plaintiff's $2,333,227.50 claim.
Subsequently, plaintiff commenced this action against defendant [FN5]
seeking, among other things, compensatory and consequential damages, claiming that defendant's refusal to pay the full amount of plaintiff's losses was a breach of contract. After completion of discovery, both parties [*2]moved for summary judgment. At oral argument, Supreme Court indicated that, although it was sympathetic to plaintiff's plight, plaintiff had nevertheless been obligated to carry adequate insurance in order to receive the payout it sought and its failure to do so was not caused by defendant's actions. Consequently, Supreme Court granted defendant's motion for summary judgment dismissing the complaint against it and denied plaintiff's motion. Plaintiff appeals.[FN6]

"When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations. Furthermore, summary judgment can only be granted when the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the [nonmoving] party fails to establish the existence of material issues of fact which require a trial of the action" (Stanhope v Burke, 220 AD3d 1122, 1123 [3d Dept 2023] [internal quotation marks and citations omitted]; see Grant v Temple, 216 AD3d 1351, 1352 [3d Dept 2023]). "In determining a dispute over insurance coverage, we first look to the language of the policy. As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 681-682 [2017] [internal quotation marks and citations omitted]; see Tonoga, Inc. v New Hampshire Ins. Co., 201 AD3d 1091, 1094 [3d Dept 2022]).
The policy at issue provides that "[defendant] will not pay a greater share of any loss than the proportion that the Limit of Insurance bears to the value on the date of completion of the building described in the Declarations Page." It further explains how coverage is to be calculated. First, the limit of insurance is divided by the projected value of the building on the date of completion. Second, the amount of the loss is multiplied by the percentage calculated in the first step. Third, the deductible is subtracted from the number calculated in the second step. The declarations page of the policy clearly stated that the limit of builder's risk insurance was $2.7 million. In addition, the policy specifically provides that "[t]his policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations Page is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy."
Defendant also proffered the deposition testimony of Richard Hammond-Moore, a field adjuster for defendant, who testified that he was assigned plaintiff's [*3]claim shortly after the fire. He testified that after confirming that the policy limit was $2.7 million, he worked with a public adjuster to calculate the amount of loss, which came to $2,333,227.50 [FN7] Plaintiff does not dispute the amount of loss. and, on that basis, issued plaintiff a check for $1,744,920.62. The payout was calculated by determining the value of the building on the date of completion — which again the parties do not dispute was $3,574,503.00 — and dividing the coverage held by plaintiff — in this case $2.7 million — by that number to determine a proportion. The proportion determined by that calculation — here, 0.7553 — was then multiplied by the claimed losses — $2,333,227.50 — to provide the payout, not including deductibles and other expenses.
Based on the foregoing, Supreme Court properly found that defendant met its prima facie burden of establishing that it did not breach its contract with plaintiff. The terms of the policy are clear and unambiguous and required plaintiff to maintain insurance equal to the projected value of the building at the time of completion, or risk any claim being reduced in proportion to the deficiency in coverage. Because plaintiff failed to carry adequate insurance, the court properly determined that it was entitled only to the proportional share of its loss, as calculated by defendant. Stated differently, defendant adjusted and paid plaintiff's claim in full compliance with the clearly written terms of the policy. As defendant met its initial burden of establishing entitlement to summary judgment, the burden shifted to plaintiff to demonstrate the existence of material questions of fact (see Ali-Hasan v St. Peter's Health Partners Med. Assoc., P.C., 226 AD3d 1199, 1200 [3d Dept 2024], lv denied 42 NY3d 906 [Oct. 22, 2024]).
In opposition, plaintiff did not dispute that the builder's risk policy limit at the time of the fire was, indeed, $2.7 million. Rather, plaintiff argued that the NFAI provision of the policy did not apply to the subject claim because plaintiff suffered a "total loss" and was, therefore, entitled to 100% of its loss. According to plaintiff, the NFAI condition was, in effect, a "coinsurance provision," which it claims is inapplicable when the insured suffers a total loss. Plaintiff further argues that Supreme Court erred by ignoring the general purpose of coinsurance provisions and fundamental principles of contract interpretation, both of which, it claims, demonstrate that defendant's enforcement of the NFAI provision was contrary to law. Inasmuch as the interpretation proposed by plaintiff is contradicted by the clear and unmistakable provisions of the policy, we disagree.
Builder's risk insurance policies frequently rely on projected completion values to calculate premiums and are designed to cover construction projects before they become insurable buildings, generally covering construction materials and tools as they are brought to the site, assembled and put into place ([*4]see 68A NY Jur 2d, Insurance § 601; 168 Am Jur 2d, Trials § 91 [3]). Coinsurance provisions divide the risk between insurer and insured by conditioning the relative amount of coverage on the insured's participation in the insurance scheme — e.g., an underinsured participant with a low premium will not be covered to the same extent as a fully insured participant with a correspondingly high premium (see 70A NY Jur 2d, Insurance § 2228; 2 Bruner & O'Conner on Construction Law § 11:514 [2023]). The idea behind coinsurance provisions is to allow the insured to pay a lower premium by taking on some of the risk of loss (see 70A NY Jur 2d, Insurance § 2228; 2 Bruner & O'Conner on Construction Law § 11:514 [2023]). In this regard, we agree with plaintiff that coinsurance provisions generally, and the NFAI provision at issue here, act in a similar fashion — they reduce the insurer's obligation to pay a claim in proportion to the amount by which the policyholder is underinsured.
However, we disagree with plaintiff's interpretation of the decisions in Nicastro v New York Cent. Mut. Fire Ins. Co. (148 AD3d 1737, 1739 [4th Dept 2017]) and Magie v Preferred Mut. Ins. Co. (91 AD3d 1232, 1235 [3d Dept 2012]). The crux of plaintiff's argument is that those decisions stand for the proposition that coinsurance (and by extension NFAI) provisions are, in essence, void in situations where the insured's loss is "total." To be sure, in both of those cases the Courts held that the insurers were liable for the full amount of insurance set forth in the respective policies. However, the reason was not that a total loss somehow voided the policy's coinsurance provision but, rather, that it made application of the coinsurance provision irrelevant. "As the Court of Appeals explained with respect to a[n 80%] coinsurance clause, '[w]here either the loss or the insurance equals or exceeds 80 per cent of value, the clause has no effect, but when both are less, the insured and the insurer bear the loss in certain proportions. The amount of the insurance is not the variable factor, but the amount of loss. The amount of insurance is at all times the same, but when the loss is partial the insurer stands only a part, unless the insurance is for the full percentage, whereas if the loss is total, the insurer stands all, not exceeding the limit stated in the policy' " (Nicastro v New York Cent. Mut. Fire Ins. Co., 148 AD3d at 1739 [emphasis added], quoting Farmers' Feed Co. of N.J. v Scottish Union & Natl. Ins. Co., 173 NY 241, 247 [1903]). In other words, a coinsurance provision is applied as written unless and until it becomes irrelevant — i.e., when its application would result in a payout exceeding the total amount of insurance purchased. Here, plaintiff was paid a proportion of its damages, calculated in the manner clearly spelled out in the NFAI provision of the policy, and we find no merit to plaintiff's argument that its claimed "total loss" somehow negated that provision. "Courts [*5]may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017] [citations omitted]; see Ali-Hassan v St. Peter's Health Partners Medical Associates, P.C., 226 AD3d at 1203). Holding as urged by plaintiff would require us to add a provision to the insurance contract here, which we cannot do.
Plaintiff also failed to raise a triable issue of fact as to whether defendant should be estopped from imposing the NFAI provision because defendant did not "properly handle" Fairmont's request on plaintiff's behalf to increase plaintiff's policy limits to $3.5 million, thereby "prevent[ing]" plaintiff from "complying" with the NFAI condition. The existence of a valid and enforceable contract governing a particular subject matter precludes recovery under a promissory estoppel cause of action arising out of the same subject matter (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.,70 NY2d 382, 388 [1987]; see also Pacella v Town of Newburgh Volunteer Ambulance Corps. Inc., 164 AD3d 809, 814 [2d Dept 2018]; Susman v Commerzbank Capital Mkts. Corp., 95 AD3d 589, 590 [1st Dept 2012], lv denied 19 NY3d 810 [2012]). Here, defendant established not only that the parties had a contract, namely, the insurance policy, but also that the policy prohibited any change to it without a change endorsement issued by defendant. In opposition, plaintiff failed to raise a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). As stated earlier, there is no dispute that Fairmont did not have the authority to bind defendant to terms beyond those in the policy or alter those terms. There was no promise made to plaintiff by defendant, beyond what appeared in the terms of the policy. Had plaintiff read the renewed policy that was both mailed and emailed to it, or even just the declarations page, it would have seen that the policy limits of its builder's risk coverage were $2.7 million and would have had the opportunity to renegotiate those limits.[FN8]
The dollar amount on the declarations page does not qualify as technical or complex language. To the contrary, an examination of the declarations page of the policy would have made it readily apparent to plaintiff that defendant either did not receive Fairmont's request to increase plaintiff's policy limits or did not agree to increase plaintiff's policy limits. Either way, plaintiff cannot now claim that it had a reasonable expectation of coverage that was not provided under an unambiguous policy that it did not read.
Clark, J.P., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1:Plaintiff already had a policy with defendant, insuring it for a variety of matters, and added this new coverage to that policy. "Builders risk covers a project in construction, before it becomes insurable as a building, while its materials and components are being moved on-site, assembled, and put in place" (Village of Kiryas Joel Local Dev. Corp. v Insurance Co. of N. Am., 996 F2d 1390, 1392 [2d Cir 1993]; see 68A NY Jur 2d, Insurance § 601; 168 Am Jur 2d, Trials § 91 [3]).
Footnote 2:According to plaintiff, in or about December 2018, it procured a construction loan of $3.5 million for the new school. To close on the loan, the bank required plaintiff to increase its builder's risk coverage from $2.7 million to $3.5 million.

Footnote 3:Defendant claims to have no record of Fairmont's email request for an increase in coverage, but concedes that, for summary judgment purposes, it must be assumed that the request was sent and received.

Footnote 4:Plaintiff does not dispute the accuracy of this figure.
Footnote 5:During the pendency of this appeal, plaintiff settled its claims against Fairmont.
Footnote 6:Although plaintiff pleaded four causes of action, on appeal it limits its argument to its first, for breach of contract, and its fourth, for estoppel. Accordingly, plaintiff's remaining causes of action are deemed abandoned (see Matter of Ryan, 226 AD3d 1183, 1186 [3d Dept 2024]). Plaintiff has also abandoned its request for counsel fees.

Footnote 7:Plaintiff does not dispute the 
amount of loss.
Footnote 8:Once a declarations page and insurance policy has been received, it constitutes "conclusive presumptive knowledge of the terms and limits" of a policy (Rogers v Urbanke, 194 AD2d 1024, 1024-1025 [3d Dept 1993]).